**FILED**

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA

2015 JUN -5  A 11: 24

CLERK US DISTRICT COURT
ALEXANDRIA, VIRGINIA

| | | |
|---|---|---|
| MATTHEW THOMAS GRADY, | ) | Case No.: 1 : 15 CV 707 |
| | ) | |
| Plaintiff, | ) | |
| | ) | COMPLAINT FOR VIOLATION OF |
| v. | ) | FEDERAL EMPLOYEES HEALTH |
| | ) | BENEFITS ACT OF 1959 (FEHBA) |
| OFFICE OF PERSONNEL | ) | [5 U.S.C. § 8901 et seq] AND OF THE |
| MANAGEMENT, | ) | FEDERAL MENTAL HEALTH |
| | ) | PARITY ACT [29 U.S.C. § 1185(a)] |
| Defendant. | ) | |
| | ) | Jury Trial Demanded |

Plaintiff Matthew Thomas Grady, on behalf of his minor son, JG, alleges as follows:

## NATURE OF THE ACTION

1.      This action is brought under the Federal Employees Health Benefits Act

of 1959 (FEHBA), 5 U.S.C. § 8901 *et seq.* as it involves a claim for health benefits

brought by a covered participant in a plan obtained by defendant United States

Office of Personnel Management (OPM) for the benefit of federal employees and

their families.

## JURISDICTION AND VENUE

2.      This Court has jurisdiction over this action under 5 U.S.C. § 8912.

3.      Venue is proper under 28 U.S.C. § 1391(b) because a substantial part of

the events and omissions giving rise to the claims alleged herein occurred in the

Eastern District of Virginia.  In addition, Plaintiff believes that the specific health

plan at issue is authorized to transact and is transacting business in the Eastern

District of Virginia.

1

PARTIES

4.     Plaintiff JG is and was at all relevant times a resident of Fairfax County, Virginia. He is the son of and at all relevant times has been (and continues to be) a dependent of Matthew Thomas Grady, a federal employee of the United States of America since February 24, 2013.

5.     Plaintiff is now and at all relevant times has been a covered family member within the meaning of 5 U.S.C. § 8901. MD-Individual Practice Association, Inc. benefit plan (Plan) afforded Plaintiff health benefits pursuant to coverage obtained by OPM. The Plan provides that it is "a health maintenance organization individual practice plan – high option." The Plan provides extensive coverage for a wide range of medical, surgical, and mental health needs. A true and correct copy of the 2013 Plan brochure is attached hereto as Exhibit A.

6.     Defendant OPM is a federal agency responsible for the final administrative review of the Plan's decision to deny Plaintiff medical benefits.

FACTUAL ALLEGATIONS

7.     Doctor Douglas Bierma diagnosed Plaintiff with autism on November 23, 2009. A true and correct copy of Plaintiff's diagnosis is attached hereto as Exhibit B. "Autism is a neurobiological disorder that affects a child's development by severely limiting his or her ability to interact with others." *McHenry v. Pacificsource Health Plans*, 679 F.Supp.2d 1226, 1230 (D.Or. 2010) (citation omitted). "Federal regulations define autism as a 'developmental disability significantly affecting verbal and nonverbal communication and social interaction,

2

generally evident before age three, that adversely affects a child's educational performance.'" *Id.* (citing 34 C.F.R. § 300.8(c)(1)(i)). "The cause of autism is unknown and may have multiple etiologies that are currently grouped together under this diagnostic umbrella because of the similar core behavioral symptomatology." *Id.* at 1231 (citations and internal quotation marks omitted). Medical professionals diagnose autism "by the behavioral symptoms it causes." *Id.* "Examples of these symptoms can include a lack [of] interest in establishing relationships, obliviousness to others or their needs, lag in development of spoken language or language comprehension, and stereotyped body movements like clapping, finger flicking, rocking or swaying, or walking on tiptoes." *Id.* (citation omitted). Other symptoms exhibited by children with autism include "impaired social interaction, impaired communication abilities, decreased motor skills, tantrums, and unusual responses to sensory experiences." *Berge v. United States*, 879 F.Supp.2d 98, 103 (D.D.C. 2012) (citations and internal punctuation marks omitted). Plaintiff is now and at all relevant times exhibits behaviors consistent with autism. A true and correct copy of an evaluation Plaintiff had in May 2013 is attached hereto as Exhibit C.

8.      In early 2010, Plaintiff began receiving Applied Behavior Analysis (ABA) to treat his autism. Plaintiff received ABA therapy in El Paso, Texas, and then moved to Alexandria, Virginia, in July 2010. Ms. Summer Pierce, a board certified behavior analyst, implemented ABA therapy for Plaintiff from October 2010 – July 2013. She provided an assessment of Plaintiff's development, which included the following: (1) "Prior to ABA therapy, [Plaintiff] had limited skill sets,

including very poor functional communication skills, and had not made progress on age appropriate learning areas;" (2) In fact, Plaintiff "would exhibit behaviors such as crying and frequent tantruming when given any direction;" (3) Moreover, Plaintiff "had extremely limited communication skills;" (4) But with ABA therapy, Plaintiff "made large gains in many skill areas;" and (5) These areas included development of receptive language vocabulary, imitation skills, functional play skills, self-care, and functional communication. Plaintiff's progress "has been directly due to intensive, individual intervention." "[Plaintiff] benefits greatly from consistent intervention and regression of skill sets is of great concern if ABA therapy were not continually provided." A true and correct copy of Ms. Pierce's assessment is attached hereto as Exhibit D.

9.   On May 6, 2013, Dr. Catherine Bae opined that Plaintiff required continued ABA services "as a medically necessary treatment for autism." ABA services would have "a direct and positive impact upon [Plaintiff's] speech, language, and social skills as well as his cognitive and physical functioning." In other words, Dr. Bae prescribed ABA therapy for Plaintiff because she deemed it "to be a medically necessary habilitative service that [would] enhance [Plaintiff's] ability to function." A true and correct copy of Dr. Bae's ABA prescription is attached hereto as Exhibit E.

10.   "ABA describes a systematized process of collecting data on a child's behaviors and using a variety of behavioral conditioning techniques to teach and reinforce desired behaviors while extinguishing harmful or undesired behaviors.

Practically speaking, it is the application of behavioral principles to shape behaviors and teach new skills in an individual." *McHenry*, 679 F.Supp.2d at 1231 (citation and internal quotation marks omitted). ABA uses "operant conditioning" and "discrete trial training" and other behavioral psychological techniques "to teach basic life skills one small step at a time." *Id.* ABA focuses "on the use of rewards or reinforcement to encourage desired behaviors and the elimination or reduction of unwanted behaviors by removing their positive consequences by means of 'time out,' 'extinction,' or 'punishment.'" *Id.* (citation omitted).

11. Plaintiff's health benefits coverage with the Plan began on April 25, 2013. A true and correct copy of Plaintiff's enrollment in the Plan is attached hereto as Exhibit F. Plaintiff sought pre-authorization to continue receiving ABA therapy from Ms. Pierce at Autism Services International in accordance with Dr. Bae's prescription and recommendation. At the time, Dr. Bae served as Plaintiff's primary care physician.

12. On April 30, 2013, Associate Medical Director Dr. Theodore A. Allchin sent Plaintiff a letter denying prospective outpatient ABA therapy. Specifically, Dr. Allchin wrote "[b]ased on Applied Behavior Analysis being an unproven technology, it is my determination to deny Outpatient Applied Behavior Analysis Treatment benefits from 04/25/2013 forward. The UBH Clinical Technology Assessment Committee (CTAC) for Applied Behavior Analysis was reviewed. Standard treatment for autism remains available." A true and correct copy of Dr. Allchin's April 30, 2013 letter is attached hereto as Exhibit G.

13.    On June 5, 2013, Plaintiff asked Dr. Allchin to reconsider his denial of prospective ABA therapy for a variety of reasons.  First, Plaintiff pointed out that ABA therapy met the definition of medically necessary "habilitative" therapy under the terms of Plaintiff's plan.  Second, Plaintiff stated that ABA therapy would qualify as a covered mental health benefit under the terms of his plan, and that United Behavioral Health representatives orally stated that the CPT codes for ABA therapy were designated essential mental health benefits.  Third, Plaintiff provided scholarly articles, professional entities, and federal court decisions showing ABA therapy to be the standard treatment for children with autism.  A true and correct copy of Plaintiff's June 5, 2013 letter seeking reconsideration is attached hereto as Exhibit H.

14.    On July 9, 2013, Regional Medical Director Dr. Andrew Martorana wrote a letter "uphold[ing] the prior non-coverage determination due to the policy exclusion for unproven treatment."  A true and correct copy of Dr. Martorana's letter is attached hereto as Exhibit I.

15.    On October 4, 2013, Plaintiff asked Defendant to review the Plan's decision to deny prospective outpatient ABA therapy at Autism Services International from April 25, 2013 onward.  A true and correct copy of Plaintiff's request is attached hereto as Exhibit J.  While Defendant acknowledged receiving Plaintiff's request on October 24, 2013, Defendant never responded to Plaintiff's request for administrative review.  A true and correct copy of Defendant's October 2013 acknowledgement is attached hereto as Exhibit K.

16.     Throughout the fall of 2013, Plaintiff's ABA service provider, Achieve Beyond, attempted to get ABA authorized by the Plan by submitting Plaintiff's treatment plan. Plaintiff sought to be reimbursed for the $5,847.50 spent on ABA therapy between June 11, 2013 – December 23, 2013. On January 16, 2014, Plaintiff received a letter from Kathryn Klatt. This letter denied ABA therapy for Plaintiff and stated "[a]s described in the section of your Certificate of Coverage: Applied Behavior Analysis is denied due to being an excluded service." A true and correct copy of Ms. Klatt's letter is attached hereto as Exhibit L.

15.     On February 3, 2014, Plaintiff asked Ms. Klatt to reconsider the denial of ABA therapy and demanded the Plan reimburse Plaintiff for the $5,847.50 Plaintiff spent on ABA therapy between June 11, 2013 – December 23, 2013. First, Plaintiff pointed out that ABA therapy is not mentioned in the plan brochure nor does the Plan specifically list it as an "excluded service." Instead, Plaintiff pointed out that ABA therapy met the definition of a medically necessary "habilitative" service under the terms of Plaintiff's plan. Next, Plaintiff pointed out that ABA therapy would qualify as a covered mental health benefit under the terms of his plan, and that United Behavioral Health representatives orally stated that the CPT codes for ABA therapy were designated essential mental health benefits. Third, Plaintiff provided scholarly articles, professional entities, and federal court decisions showing ABA therapy to be the standard treatment for children with autism. A true and correct copy of Plaintiff's February 3, 2014 letter seeking reconsideration is attached hereto as Exhibit M.

16.    Plaintiff then received two letters from United Behavioral Health. The first letter is dated July 9, 2013, but stamped "revised" with a handwritten date of March 6, 2014 from an unknown individual. The letter is a duplicate copy of Dr. Martorana's July 9, 2013 denial claiming that ABA therapy is "unproven treatment." A true and correct copy of this March 6, 2014 letter is attached hereto as Exhibit N.

17.    The second letter Plaintiff received is dated March 7, 2014 from Amber B. Jones-Alexander, a behavioral clinical consultant peer reviewer. Ms. Jones-Alexander upheld the prior non-coverage determination for ABA services between June 11, 2013 and January 12, 2014. Ms. Jones-Alexander provided the following rationale for her determination: "The member's Federal Employees Health Company Certificate of Coverage states that benefits are payable for covered expenses for covered services. It further defines covered services as those listed in the Schedule of Benefits, which does not list Applied Behavior Analysis as a covered service; therefore, this service is non-covered and therefore excluded from insurance benefit coverage." A true and correct copy of Ms. Jones-Alexander's letter is attached hereto as Exhibit O.

18.    On May 6, 2014, Plaintiff asked Defendant to review the Plan's decision denying ABA therapy between June 11, 2013 – December 23, 2013 and refusal to reimburse Plaintiff for the $5,847.50 spent on ABA therapy during this time period. A true and correct copy of Plaintiff's request is attached hereto as Exhibit P. Plaintiff sent his request via certified mail with return receipt requested. A true and correct copy of proof of delivery is attached hereto as Exhibit Q.

Defendant never acknowledged receiving Plaintiff's request and Defendant never responded to Plaintiff's request for administrative review. Plaintiff sent an email to FEHB@opm.gov on July 8, 2014 asking about the status of Plaintiff's request for administrative review. A true and correct copy of Plaintiff's July 8, 2014 email is attached hereto as Exhibit R. Plaintiff received an email from FEHB@opm.gov on July 8, 2014 stating "[y]our email has been received by the Office of Personnel Management's (OPM) Healthcare and Insurance division. We will make every effort to respond within two business days." A true and correct copy of Defendant's July 8, 2014 email is attached hereto as Exhibit S. However, Defendant never responded.

19.    Plaintiff has exhausted his administrative remedies.

FIRST CLAIM:  VIOLATION OF THE FEHBA

20.    Plaintiff incorporates by reference paragraphs 1 through 19 as though fully set forth herein.

21.    Given Defendant's failure to act on Plaintiff's May 2014 request for reconsideration of the Plan's decision denying ABA therapy, it is unclear on what ground defendant would defend the Plan's decision. According to the March 6, 2014 letter, the Plan denied ABA therapy because it constituted "unproven treatment." However, Ms. Jones-Alexander's March 7, 2014 letter indicates the Plan denied ABA therapy because it constituted an excluded benefit under the terms of Plaintiff's coverage.

22.    Assuming Defendant believes ABA therapy to be an excluded service, Plaintiff's plan brochure shows otherwise, as ABA therapy is never specifically

mentioned once in Plaintiff's plan brochure. Plaintiff's plan brochure contained many sections specifically and explicitly listing non-covered services. ABA therapy is not listed in any section as a non-covered service.

23. Assuming Defendant believes ABA therapy to constitute "unproven treatment," this position lacks merit and is arbitrary and capricious in light of recent federal court decisions. *See, e.g., K.G. v. Dudek*, 981 F.Supp.2d 1275, 1283, 1287 (S.D.Fla. Nov. 5, 2013) (finding defendant's determination "that ABA is experimental was arbitrary, capricious, and unreasonable both in its process and in its conclusion" because the evidence "clearly establish[ed] ABA is an effective and significant treatment to prevent disability and restore developmental skills to children with autism"); *Potter v. Blue Cross Blue Shield of Michigan*, 2013 WL 4413310, at *6 (E.D.Mich. Mar. 30, 2013) ("[l]ooking to the language of the plans, BCBS's 2010 medical policy, and the articles cited by BCBS to support its policy, the Court finds that BCBS's denial-of-benefits for ABA therapy on the grounds that such therapy is experimental or investigative was arbitrary and capricious"); *Berge v. United States*, 879 F.Supp.2d 98, 135 (D.D.C. 2012) (holding "[s]ince the Agency has failed to articulate a reasoned explanation for its determination that ABA therapy is unproven, particularly in light of evidence before it suggesting the contrary, the Court must conclude that the Agency's determination is arbitrary and capricious"); *McHenry v. Pacificsource Health Plans*, 679 F.Supp.2d 1226, 1239 (D.Or. 2010) (concluding "that ABA therapy is not experimental or investigational

in nature and that PacificSource lacked a reasonable basis reaching the opposite conclusion").

24.    As a result of the wrongful denial of benefits due Plaintiff, he has been damaged in an amount that includes the charges paid for the medically necessary ABA therapy received June 11, 2013 – December 23, 2013, charges that amount to at least $5,847.50.

SECOND CLAIM:  VIOLATION OF THE PAUL WELLSTONE AND PETE DOMENICI MENTAL HEALTH PARITY AND ADDICTION EQUITY ACT

25.    Plaintiff incorporates by reference paragraphs 1 through 24 as though fully set forth herein.

26.    On October 3, 2008, Congress enacted the Paul Wellstone and Pete Domenici Mental Health Parity and Addiction Equity Act of 2008 ("Federal Parity Act"). *See* 29 U.S.C. § 1185a; 42 U.S.C. § 300gg-5; 26 U.S.C. § 9812.  The Federal Parity Act became effective one year later on October 3, 2009, and the law's purpose sought to end discrimination for mental health treatment coverage as compared to medical and surgical services. *See Coal. for Parity, Inc. v. Sebelius*, 709 F. Supp. 2d 10, 13 (D.D.C. 2010).  While the Federal Parity Act does not require coverage of mental health services, if such coverage is provided, it must be provided "in parity" with medical and surgical benefits. *Id.*

27.    The Plan presumably considered ABA therapy to be a mental health benefit and not a medical service because the Plan referred its benefit determination to United Behavioral Health.  Moreover, Plaintiff's benefit plan specifically covered medically necessary "[p]rofessional charges for intensive outpatient treatment in a

11

provider's office or other professional setting." When Plaintiff spoke with a Plan customer service representative named Sharon at United Behavioral Health on March 13, 2013, and provided her with ABA associated CPT codes (H2012, H2019, S5108, 90834, 97532), Sharon advised these CPT codes would qualify as mental health benefits. Sharon further noted that CPT codes S5108 and H2019 were designated "essential services" with 96 units authorized per day (1 unit is equal to 15 minutes of treatment). Achieve Beyond, Plaintiff's ABA provider, was a Plan approved ABA therapy provider and billed the Plan with the CPT code H2019. Nonetheless, the Plan refused to cover Plaintiff's ABA therapy even though it qualified as a mental health benefit.

28.     The Federal Parity Act requires an insurer to cover all outpatient and inpatient services to treat mental disorders covered by the diagnostic categories listed in the most current version of the Diagnostic and Statistical Manual ("DSM") of Mental Disorders, provided the services are medically necessary. For all health plans delivered, issued for delivery, or renewed on or after October 3, 2009, the Federal Parity Act requires them to ensure that treatment limitations on services to treat DSM conditions are the same as any such limitations imposed on two-thirds of the plan's medical and surgical services. See 26 C.F.R. § 54.9812-1T(b); 29 C.F.R. § 2590.712(c). Autism is listed in the most recent version of the DSM and Plaintiff requires medically necessary ABA therapy to treat his autism.

29.     The Plan did not apply the Federal Parity Act requirements to all mental health services necessary to treat conditions listed in the DSM. To the extent

. the Plan maintains a uniform position of excluding all coverage for ABA therapy to treat autism, this exclusion, limitation, policy, and practice violates the Federal Parity Act. The Federal Parity Act renders void and unenforceable all exclusions, limitations, policies, and practices that wholly exclude medically necessary services to treat DSM conditions.

PRAYER FOR RELIEF

WHEREFORE, plaintiff prays for judgment against defendant as follows:

1.      For judgment against the Defendant for damages in a specific sum to be proved at trial, a sum that will include reimbursement for reasonable charges actually paid for the medically necessary ABA therapy used to treat Plaintiff's autism, a sum that exceeds $5,000.00. A true and correct copy of invoices Plaintiff paid between June 11, 2013 – December 23, 2013 is attached hereto as Exhibit T.

2.      For a declaration that by denying Plaintiff any benefits for medically necessary ABA therapy to treat his autism, the Plan and OPM have violated Plaintiff's rights under the Federal Mental Health Parity Act, 29 U.S.C. § 1185(a).

3.      For costs of suit reasonably incurred herein.

4.      For such other order and further relief as the Court deems just and proper.

Dated: 6/5/15

By: _Matthew J. Hicks_
Matthew Grady, *Pro Se*
JG's Father